IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 27, 2026 08:39 AM
ST-2013-CV-00011
**TAMARA CHARLES**
**CLERK OF THE COURT**



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| KIWI CONSTRUCTION, LLC, | ) | CASE NO. ST-2013-CV-00011 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PAUL PONO, LANNY ROBERTS and | ) | |
| BIG BEAR CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| BIG BEAR CONSTRUCTION, INC., PAUL | ) | CASE NO. ST-2013-CV-00670 |
| PONO and LANNY ROBERTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| PHILIP HOLFORD, | ) | |
| | ) | |
| Defendant. | ) | |

Cite as: 2026 VI Super 16U

**MEMORANDUM OPINION**

¶1    **THIS MATTER** is before the Court on:

1. Defendant's Petition By Big Bear Construction, Inc. Pursuant To 28 V.I.C. §171 Et. Seq., ("Petition") filed January 26, 2018, in case number ST-2013-CV-00011;

2. Plaintiff Kiwi Construction, LLC's Opposition To Petition By Big Bear Construction, Inc. Pursuant To 28 V.I.C. §171 Et. Seq., ("Opposition") filed February 20, 2018;

3. Big Bear Construction, Inc.'s Reply To Kiwi Construction, LLC's Opposition To The Petition Pursuant To 28 V.I.C. §171 Et. Seq., ("Reply") filed March 2, 2018;

4. Kiwi Construction, LLC And Philip Holford's Supplemental Opposition To Big Bear Construction, Inc.'s Petition Pursuant To 28 V.I.C. §171 Et. Seq., ("Supplemental Petition") filed April 23, 2025;

5. Big Bear Construction, Inc.'s Response To Kiwi Construction, LLC & Philip Holford's Supplemental Opposition To Big Bear's Petition Pursuant To 28 V.I.C. §171 Et. Seq., ("Response") filed July 21, 2025; and

Kiwi Construction, LLC v. Pono et al.                                          2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 2 of 22

6. Big Bear Construction, Inc.'s Urgent Request For Ruling On Big Bear's Petition Pursuant To 28 V.I.C. §171 Et. Seq., ("Request For Ruling") filed January 16, 2026.

¶2      For the reasons set forth below, the Court will grant Defendant's Petition in part and deny it in part.

## I.      FACTUAL AND PROCEDURAL HISTORY.

¶3      On January 8, 2013, Plaintiff Kiwi Construction, Inc. ("Kiwi') filed a multi-count complaint against Defendants Paul Pono, Lanny Roberts, and Big Bear Construction, Inc. ("Big Bear"). Kiwi hired Big Bear as a subcontractor to perform certain construction work on real property located at Parcel No 5A, Estate Peter Bay, St John, Virgin Islands.[1] The work involved constructing a residence for Mr. Thomas Secunda ("Secunda"), who owned the property ("Secunda Project").[2] Kiwi's Complaint arose from allegations that Defendants breached the contract.[3] Defendants moved to dismiss the Complaint, and by Order filed April 17, 2013, the Court denied Defendants' motion as to all claims asserted by Kiwi against Defendants Paul Pono and Lanny Roberts.[4] The Court stayed all claims Kiwi asserted against Big Bear while certain claims were submitted to arbitration pursuant to an agreement.[5] On September 24, 2015, the Arbitrator awarded Big Bear $126,397.37 in damages ("Arbitration Award").[6] On January 15, 2016, this Court recognized the Arbitrator's Award as having the same force and effect as a judgment of the Superior Court ("Judgment").[7] To date, Big Bear has obtained $28,008.57 from Kiwi towards satisfaction of the Judgment, including $6,908.57 from Kiwi's Merchant's Commercial Bank account, $8,600.00 from the Marshal's sale of a JCB Loader, and $12,500.00 from the Marshal's sale of a Jeep Wrangler.[8] Thus, the balance to be collected from the $126,397.37 Judgment is $98,388.80, not including interest[9] Big Bear now seeks an order declaring that Kiwi's sole owner and managing member, Philip Holford ("Holford"), violated the Virgin Islands Uniform Fraudulent Transfer Act ("VIUFTA") by making transfers from Kiwi to himself to avoid payment of the Judgment.

## II.      ARGUMENT.

¶4      Big Bear argues that by transferring Kiwi's assets to himself, converting the assets through personal purchases, and comingling Kiwi's funds with his personal assets, Holford intentionally

---

[1] *Big Bear Construction, Inc. v. Kiwi Construction, LLC*, American Arbitration Association case number 32-20-1300-0066 at 2.

[2] *Id.* at 1-2.

[3] Compl. ¶6, Ex.1 at 1.

[4] Order (April 17, 2013).

[5] *Id.*

[6] *Big Bear Construction, Inc. v. Kiwi Construction, LLC*, American Arbitration Association case number 32-20-1300-0066.

[7] Order (January 15, 2016).

[8] Def.'s Pet. at 1 n.1; Order (June 18, 2025).

[9] Def.'s Pet. at 1 n.1.

Kiwi Construction, LLC v. Pono et al.                                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 3 of 22

hindered Kiwi's ability to satisfy the Judgment. Holford[10] replies that Big Bear failed to specify which transfers it seeks to void. Holford also argues that he and the company maintain separate bank accounts and any payments Kiwi made on his behalf are shareholder distributions. Further, Holford asserts that he believed the pending arbitration would result in Kiwi being Big Bear's creditor, not its debtor.

## III.    LEGAL STANDARD.

¶5    The VIUFTA identifies two categories of voidable transfers: 1) those that are fraudulent as to present and future creditors[11] and 2) those which are fraudulent only as to present creditors.[12] The VIUFTA also creates distinct causes of action for transfers based on either actual or constructive fraud. Prevailing on a theory of actual fraud under § 174(a)(1) requires proof that the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor."[13] Recognizing that actual intent is difficult to prove through direct evidence because individuals will rarely admit they intended to hinder, delay, or defraud a creditor,[14] Virgin Islands courts consider various "badges of fraud" or "indicia of fraud" to establish a presumption of fraudulent intent.[15] Badges of fraud are "circumstances so frequently attending fraudulent transfers that the inference of fraud arises from them."[16] A "[s]trong presumption of intent to defraud" is found where several badges are present.[17] Once a presumption is established "The debtor must then 'clearly rebut[ ]' that inference."[18]

¶6    Proving constructive fraud under § 174(a)(2) and § 175, by contrast, does not require proof of actual intent. Instead, constructive fraud is established when a debtor does not receive fair value for the transfer or when the transfer leaves the debtor unable to pay creditors.[19]

¶7    Under § 177(a)(1), creditors can seek avoidance of the transfer to the extent necessary to satisfy their claim.[20] When a creditor seeks avoidance under § 177(a)(1), § 178(b) specifies that the creditor may recover a judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less.[21]

¶8    The pertinent provisions of the VIUFTA follow.

---

[10] Kiwi and Holford advance their defense jointly. The Court will refer to these arguments as attributable to Holford.
[11] 28 V.I.C. § 174(a).
[12] 28 V.I.C. § 175.
[13] 28 V.I.C. § 174(a)(1).
[14] *Redemption Holdings, Inc. v. Government of the Virgin Islands*, 2016 WL 3950047, at *4 (V.I. 2016).
[15] *Id.*
[16] *Id.*
[17] *MSKP Oak Grove, LLC v. Venuto*, 839 F. App'x 708, 712 (3d Cir. 2020).
[18] *Id.*
[19] 28 V.I.C. § 174(a)(2); § 175.
[20] 28 V.I.C. § 177(a)(1).
[21] 28 V.I.C. § 178.

Kiwi Construction, LLC v. Pono et al.                           2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 4 of 22

¶9     Section 174(a) of Title 28 addresses transfers fraudulent as to present and future creditors:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
(b) In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor.[22]

¶10    Section 175 of Title 28 addresses transfers fraudulent as to present creditors:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

---

[22] 28 V.I.C. § 174.

Kiwi Construction, LLC v. Pono et al.                                              2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 5 of 22

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.[23]

¶11    Among other remedies, 28 V.I.C. § 177(a)(1) provides that a creditor may obtain as a relief for a fraudulent transfer avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.[24]

¶12    Section 178(b) of Title 28 addresses defenses, liability, and protection of transferees:

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 177(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) the first transferee of the asset or the person for whose benefit the transfer was made.[25]

## IV.    ANALYSIS

¶13    Big Bear's Petition alleges Holford, as Kiwi's sole owner, made fraudulent transfers preventing Big Bear from satisfying its Judgment. Big Bear's Petition is based on Title 28 V.I.C. § 174(a)(1). When determining whether Holford possessed actual intent to defraud Big Bear, this Court looks to see if any "badges of fraud" codified in 28 V.I.C. § 174(b)(1)-(11) were present in the transfer.[26] In this matter, the Court finds multiple badges of fraud exist surrounding transfers by Kiwi to Holford, or for the benefit of Holford, from 2013 to 2015.

### A.    Transfers in 2013.

#### 1.    July 8, 2013 $45,000.00 wire transfer.

¶14    Big Bear filed its Demand For Arbitration on February 1, 2013. Kiwi's 2013 Profit and Loss Report provides that Kiwi made shareholder distributions to Holford totaling $106,403.96

---

[23] 28 V.I.C. § 175.
[24] 28 V.I.C. § 177(a)(1).
[25] 28 V.I.C. § 178(b)(1)
[26] 28 V.I.C. § 174(b)(1)-(11); *Redemption Holdings, Inc.*, 2016 WL 3950047, at *4-5.

Kiwi Construction, LLC v. Pono et al.                                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 6 of 22

for the year.[27] The distributions include a July 8, 2013, $45,000.00 wire transfer from Kiwi to Steen Enterprises on Holford's behalf. According to the Report, Kiwi issued Holford a $60,000.00 check numbered 1102 on December 31, 2013.[28] Big Bear alleges that because the transactions were made to benefit Holford, an insider, and because the transfers occurred after an arbitration demand was filed, Holford made the transfers with actual intent to hinder, delay, or defraud Big Bear.[29] Big Bear also argues the transfers diminished the assets for which it could recover and therefore the transfers were fraudulent.[30] Holford argues in his Opposition that the $45,000.00 wire transfer has already been reviewed and explained by this Court as a shareholder distribution for purchase of Holford's personal equipment.[31] Holford adds that "to the extent that Kiwi made payments on behalf of Holford, those payments are delineated as distributions attributable to him."[32]

¶15     Holford is correct that the $45,000.00 wire transfer has been twice addressed by this Court. In its September 7, 2016 and October 13, 2017 Orders, the Court determined that the $45,000.00 transfer "is adequately explained" as a shareholder distribution for purchase of Holford's personal equipment, a 2008 Kubota KC161 388.[33] Yet, because the Court's prior rulings focused on the threshold question of asset ownership for attachment purposes, and not the merits of the transfer itself, the Orders do not preclude a fraudulent transfer analysis. Moreover, Big Bear's Petition requests that this Court said aside said transfer and allow Big Bear to attach to Holford's personal assets. Accordingly, the Court examines the transfer under the badges of fraud analysis.

### a. Badge (b)(1): Transfers to an Insider.

¶16     First, an LLC distribution to its sole manager-member constitutes an insider transfer.[34] The VIUFTA defines "insider" to include multiple categories of relationships. Where the debtor is a corporation, an insider may be a director, an officer, or "person in control" of that corporation.[35] Though the VIUFTA doesn't specifically enumerate who qualifies as an "insider" of an LLC, the VIUFTA does provide that an insider can include "a managing agent of the debtor," as is the case here where Holford acts as Kiwi's sole manager-member and owner. Thus, the $45,000.00 transfer from Kiwi to Steen Enterprises on Holford's behalf satisfies the first badge of fraud listed under § 174 (b)(1).

---

[27] Pls.' Suppl. Opp'n at 1.

[28] *Id.*

[29] Def.'s.Resp. to Suppl. Opp'n at 3-4.

[30] *Id.*

[31] Pls.' Suppl. Opp'n at 4.

[32] *Id.*

[33] *See* September 7, 2016, and October 13, 2017, Orders.

[34] *Redemption Holdings, Inc.*, 2016 WL 3950047, at *4 ("First, the Court finds that Jaber's transfer of the Property to RHI was an insider transfer because Jaber was the sole shareholder and President of RHI at the time of the assignment and redemption.").

[35] 28 V.I.C. § 171(7)(B)(i-iii).

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 7 of 22

2026 VI Super 16U

### b. Badge (b)(2): Debtor Retention or Control of Property.

¶17     Because the transfer was wired to a third party for a purchase, Kiwi did not retain control over the funds, failing to satisfy badge (b)(2).

### c. Badge (b)(3): The Transfer was Disclosed or Concealed.

¶18     As to factor (b)(3), Big Bear offers no argument explaining how or where it alleges that the shareholder distribution was concealed. Given that the transfer was previously litigated for attachment purposes and described and disclosed by Kiwi's Profit and Loss Detail under underscores the disclosed and open nature of the transfer.

### d. Badge (b)(4): The Debtor was Sued or Threatened with Suit before the Transfer was Made.

¶19     Because the transfer occurred after Big Bear's Demand for Arbitration, badge b(4), asking whether the transfer occurred after threat of suit, is satisfied.[36]

### e. Badge (b)(5): The Transfer Consisted of Substantially all of the Debtor's Assets.

¶20     Based on the analysis to follow concerning the company's asset valuation in 2013, the Court is not satisfied that the transfer consisted of substantially all of Kiwi's assets, failing to satisfy badge (b)(5).

### f. Badge (b)(6): The Debtor Absconded.

¶21     Neither Kiwi nor Holford absconded, failing to satisfy badge (b)(6).

### g. Badge (b)(7): The Debtor Removed or Concealed Assets.

¶22     The removal of $45,000.00 from Kiwi's account satisfies badge(b)(7), questioning whether assets were removed or concealed. As the Third Circuit has explained, when funds move "from corporate to individual accounts, out of the reach of creditors," the removal element is satisfied.[37] Despite Holford arguing "to the extent that Kiwi made payments on behalf of Holford, those payments are delineated as distributions attributable to him,"[38] "nothing in the statute or case law" draws a distinction between shareholder distributions and removals.[39]

---

[36] See Big Bear's Demand For Arbitration, filed on February 1, 2013. Suit was filed on August 8, 2013.
[37] *MSKP Oak Grove, LLC*, 839 F. App'x 708, 713 (3d Cir. 2020).
[38] Pls.' Suppl. Opp'n at 4.
[39] *MSKP Oak Grove, LLC*, 839 F. App'x at 713.

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 8 of 22

2026 VI Super 16U

### h. Badge (b)(8): The Value of Consideration Received by the Debtor was Reasonably Equivalent to the Asset Transferred.

¶23    Because shareholder distributions do not generally provide "reasonably equivalent value" to an LLC, badge (b)(8) is implicated.[40] The transfer provided Holford with equipment worth $45,000.00 without Holford giving Kiwi anything in return.

### i. Badge (b)(9): The Debtor was Insolvent or Became Insolvent Shortly after the Transfer was Made.

¶24    Badge (b)(9) considers whether a debtor was insolvent at the time or shortly after a transfer was made or an obligation was incurred. A "debt"[41] is defined as a "liability on a claim," and thus a "debtor"[42] is a person liable on a claim. A "claim" arises where there is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[43] A "creditor" is simply "a person who has a claim."[44] Thus, the moment an arbitration demand is filed, a creditor has a "claim," creating a "debt" and a debtor.

¶25    The Court finds that the pending arbitration claim counted as a "debt" for Kiwi even before the Arbitrator's Award was issued because § 171's definition of a claim encompasses disputed and unliquidated rights to payment. A debtor is insolvent if "the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."[45] Thus, an insolvency analysis under (b)(9) requires the Court to determine whether Kiwi's assets before and after the transfer were sufficient to cover its liabilities—including the disputed claims arising from the arbitration. This analysis requires a reconstruction of Kiwi's financial position at the time of the transfer using its internal Profit and Loss report and Tax Returns, in the absence of bank statements provided to the Court for 2013. The Third Circuit's recent decision in *In re Allonhill, LLC* is instructive here.[46]

¶26    In *In re Allonhill*, the court held that calculating one's debt to asset ratio under an insolvency analysis requires an examination of if that "debt" — in this case, Big Bear's pending arbitration claims — was "contingent" or "disputed."[47] The *Allonhill* court explained:

> The difference is that a contingent liability require[s] a triggering event to occur before the debtor corporation has a legal duty to pay the creditor, whereas a

---

[40] *Id.* at 713 (explaining that an entity did not receive reasonably equivalent value because shareholders took money without giving the entity anything in return).

[41] 28 V.I.C. § 171(5).

[42] 28 V.I.C. § 171(6).

[43] 28 V.I.C. § 171(3).

[44] 28 V.I.C. § 171(4).

[45] 28 V.I.C. § 172.

[46] *In re Allonhill, LLC*, 2019 WL 1868610 (Bkrtcy. D. Del., 2019).

[47] *Id.* at *48.

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 9 of 22

2026 VI Super 16U

disputed claim involves disagreement about the amount of the claim. However, events spawning the claim have already occurred... Ongoing and contested lawsuits and judgments are examples of common disputed claims.[48]

¶27 Big Bear's arbitration claims were "disputed" at the time of the transfer because all the facts giving rise to the underlying liability had already occurred. The once "disputed" claims are now "fixed" post-arbitration and Judgment entered by this Court.

¶28 The *Allonhill* court also held that "Where a claim is disputed ... it can be valued at the amount at of its ultimate[] determination,"[49] but where, as is the case here, "[t]he litigation, including any appeal from an initial judgment, is fully resolved before the valuation is completed, valuation should be based on the amount of the final resolution."[50]

¶29 *Antar*, involving claims of alleged fraudulent transfers by a defendant, is also instructive here.[51] There, the defendant engaged in securities fraud years before he was found guilty.[52] In the years before he was found liable, the defendant made a series of transfers the SEC later sought to avoid as constructively fraudulent.[53] The court ultimately held the defendant was insolvent at the time of the transfers based upon the amount of the judgment that was later entered against him for securities fraud, after the transfers were made.[54]

¶30 Here, Big Bear claimed damages totaling $1,106,911.02 during arbitration,[55] and the Arbitrator ultimately awarded Big Bear $126,397.37.[56] The Court's Judgment enforcing the Award served as the ultimate resolution of the amount Kiwi owed Big Bear based upon conduct occurring prior to the transfer. Therefore, under the valuation formula provided for in *Allonhill* and *Antar*, Kiwi "possessed" the $126,397.37 arbitration debt at the time of the alleged fraudulent transfer.[57]

¶31 Kiwi's 2013 Profit and Loss Report shows a net income of $114,548.03 before taxes,[58] and Kiwi's 2013 Tax Return shows a net income of $143,410.00 before taxes.[59] The discrepancy between these figures is ordinally explained though different accounting methods for internal use

---

[48] *Id.*; *see also In re Imagine Fulfillment Servs., LLC*, 489 B.R. 136, 150 (Bankr. C.D. Cal. 2013) ("Thus, because the events giving rise to the Judgment occurred pre-petition and prior to each of the transfers at issue, the Judgment is not a contingent debt and was not contingent as of any of the relevant transfers.").

[49] *In re Allonhill, LLC*, 2019 WL 1868610, at *49.

[50] *Id.*

[51] *S.E.C. v. Antar*, 120 F.Supp.2d 431 (D.N.J., 2000).

[52] *Id.* at 434, 443.

[53] *Id.* at 435.

[54] *Id.* at 443 ("Because the SEC's claim was based on Sam M.'s securities fraud in the 1980s, Sam M. possessed this debt at the time of all the 1991 and 1997 transfers.").

[55] *See* Arbitration Award at 16.

[56] *Id.* at 25.

[57] *Id.*

[58] Pls.' Suppl. Opp'n Ex. A-1 at 7.

[59] Pls.' Suppl. Opp'n Ex. A-4 at 1.

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 10 of 22

2026 VI Super 16U

and tax purposes. On line 15 of its Schedule L, Kiwi reported company assets totaled $139,841.00 in 2013.[60] The Court adopts the tax filings as an accurate reflection of Kiwi's financial position in 2013. The tax records are final sworn statements and official documentation of financial activity, in comparison to the unaudited profit and loss reports. Using the $126,397.37 Judgment as the correct value of Big Bear's claims and Kiwi' debts and then subtracting this figure from either Kiwi's net income or Schedule L assets demonstrates that Kiwi was not insolvent before or immediately after the transfer was made or the obligation from the debt claim occurred in 2013. Thus, because Kiwi's debts did not exceed its assets at fair valuation, the $45,000.00 transfer fails to satisfy badge (b)(9).

### j. Badge (b)(10): the transfer occurred shortly before or after a substantial debt was incurred.

¶32    In accordance with the analysis above, badge (b)(10) is satisfied as the transfer occurred in July 2013, shortly after a substantial debt was incurred from Big Bear's January 2013 Arbitration Demand.

### k. Badge (b)(11): the Debtor transferred essential assets to a lienor who transferred the assets to an insider of the debtor.

¶33    Badge (b)(11) is not satisfied as Kiwi did not transfer essential assets of the business to an insider lienor.[61]

¶34    The Court finds five badges of fraud present concerning the $45,000.00 transfer, namely factors (b)(1), (4), (7), (8), and (10). "When looking for badges of fraud, courts ask not whether some of the eleven are absent, but whether some are present."[62] Because "Even one badge of fraud can suffice to 'cast suspicion on the transferor's intent,'" a "strong presumption of intent to defraud" is found where several badges are present.[63] When badges of fraud are shown, "the burden shifts to the party seeking to uphold the transfer."[64] Because Kiwi has not put forth a

---

[60] Pls.' Suppl. Opp'n Ex. A-4 at 5.

[61] § 174 (b)(11) appears to include a scrivener's error reading "lien or" instead of "lienor." Analogous statutes based upon the Uniform Fraudulent Transfer Act make clear badge (b)(11) implicates scenarios where debtor transfer assets to a lienor who then transfer the assets to an insider of the debtor. ("Due to a paucity of local case law discussing the VIUFCA, and because the purpose of the VIUFCA was 'to make uniform the law of those jurisdictions which enact it,' we look to other jurisdictions' case law for guidance on when a conveyance is fraudulent." *Redemption Holdings, Inc.*, 2016 WL 3950047, at *4 (quoting 28 V.I.C. § 212) (current version at 28 V.I.C. § 181); *see also Ottley v. Estate of Bell*, 61 V.I. 480, 494 n.10 (V.I. 2014) (explaining that "[w]hen statutes from other jurisdictions are substantially similar to a Virgin Islands statute, this Court may look for guidance at how that jurisdiction's courts have interpreted the similar statute" (citation omitted)); *In re Innovative Commc'n Corp.*, 2011 Bankr. 2011 WL 3439291 (Bankr. D.V.I. 2011) (unpublished) (holding that "in the absence of interpretation by the courts of the Virgin Islands, we look to other case law interpreting and applying UFCA").

[62] *MSKP Oak Grove, LL.*, 839 F. App'x at 712.

[63] *Id.* (citing *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 732 A.2d 482, 489 (1999)).

[64] *Saintil v. Armand*, 1996 WL 288400, at *1 (Terr.V.I.).

Kiwi Construction, LLC v. Pono et al.                                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 11 of 22

legitimate reason for the transfer absent its categorization of a shareholder distribution, the Court finds that the $45,000.00 July 2013 transfer was fraudulent.

### 2.  December 2013 $60,000.00 Check.

¶35    The Court next turns to the $60,000.00 December 2013 check that Kiwi issued to Holford as a shareholder distribution.

#### a.  Badges (b)(1), (4), (7), (8), and (10) are satisfied.

¶36    For the reasons explained in the Court's discussion of the July 2013 wire transfer, badges (b)(1), (4), (7), (8), and (10) are satisfied.

#### b.  Badge (b)(2) is not satisfied.

¶37    Kiwi did not retain control over the funds that were removed from its account, failing to satisfy badge (b)(2).

#### c.  The Transfer was disclosed under badge (b)(3).

¶38    The transfer was described and disclosed by Kiwi's Profit and Loss Detail under badge (b)(3).

#### d.  Badges (b)(5), (6), (9), and (11) are not satisfied.

¶39    Badges (b)(5), (6), (9), and (11) are not satisfied for the reasons explained in the Court's discussion of the July 2013 wire transfer.

¶40    Though Holford does not address this distribution directly in his Supplemental Opposition, he does generally offer that "Each year, at the close of the year, Kiwi Construction typically makes a one-time payment to its member Phil Holford either as a distribution or a repayment of loan ..." As stated above, case law and the VIUFTA make no distinction between shareholder distributions and removals when considering whether a transfer was fraudulent. As such, the Court finds that the $60,000.00 December 2013 check to Holford was a fraudulent transfer.

### B.  Shareholder Distributions in 2014.

#### 1.  December 2014 $40,000.00 Check.

¶41    Exhibit A of Big Bear's Petition shows that on October 5, 2015, a $40,000.00 check Kiwi issued to Holford in the amount of $40,000.00 cleared.[65] The Arbitration Award in favor of Big

---

[65] Def.'s Pet. Ex. A.

Kiwi Construction, LLC v. Pono et al.                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 12 of 22

Bear was issued on September 24, 2015, shortly before the transfer[66] Big Bear argues this transfer was fraudulent because: (1) Holford held on to the check until after the Arbitrator denied Kiwi's claims and issued an award in Big Bear's favor; (2) the transfer constituted the remainder of Kiwi's liquid assets, thereby making Kiwi insolvent; (3) the transfer was distributed to Kiwi's sole owner, an insider; and (4) Kiwi received no consideration from Holford for the transfer.[67]

¶42    The December 2014 check is documented in Kiwi's 2014 Profit and Loss Report as both a shareholder distribution and a repayment of a loan.[68] Holford states that the $40,000.00 payment was made in the ordinary course of business as it was consistent with similar payments of prior years incurred at the end of the calendar year to reduce the business's tax burden.[69] Holford also contends that Kiwi was not insolvent at the time the check was deposited in October 2015 because Kiwi had an assignment of Secunda's claims against Big Bear and thus Kiwi expected Big Bear would be its debtor, and not a creditor.[70] Big Bear counters that absent proof that Kiwi owed a loan repayment to Holford, the transfer is instead a shareholder distribution which diminished Kiwi's assets that Big Bear could attach.[71] Big Bear further asserts that shareholders are not automatically entitled to distributions, which are distributed or withheld based on a business's financial health.[72] Big Bear adds that Secunda's assignment of claims to Kiwi does not create an asset that Kiwi had an interest in.[73] Multiple badges exist surrounding the $40,000.00 check transfer.

### a.  Badge (b)(1): Transfers to an Insider.

¶43    The transfer of $40,000.00 via check was to an insider, i.e. Holford, under (b)(1).

### b.  Badge (b)(2): Debtor Retention or Control of Property.

¶44    It is clear from reviewing Kiwi's financial statements that Kiwi did not retain control of the $40,000.00 after the transfer, despite Big Bear's arguments to the contrary. Because the company is distinct from its manager, Holford's control of the $40,000.00 cannot be conflated with Kiwi's control over the funds, thus failing to satisfy badge (b)(2).

### c.  Badge (b)(3): The Transfer was Disclosed or Concealed.

¶45    Badge (b)(3), considering whether the transfer was disclosed or concealed, requires a closer look into the purpose of the transfer. While the memo section of Kiwi's 2014 Profit and Loss

---

[66] *Big Bear Construction, Inc. v. Kiwi Construction, LLC*, American Arbitration Association case number 32-20-1300-0066.
[67] *Id.*
[68] Pls.' Suppl. Opp'n Ex. A-2 at 1-2.
[69] Pls.' Suppl. Opp'n at 7-9.
[70] *Id.*
[71] Def.'s. Resp. to Suppl. Opp'n at 2-3, 5, 14
[72] *Id.* at 16.
[73] *Id.*

**Kiwi Construction, LLC v. Pono et al.**                                        **2026 VI Super 16U**
**Case No. ST-2013-CV-00011**
**Big Bear Construction, Inc. et al. v. Holford**
**Case No. ST-2013-CV-00670**
**Memorandum Opinion**
**Page 13 of 22**

Report describes the transfer as a "repayment of loan to company," the detail section of the Report as well Kiwi's 2014 Tax Return records the transfer as a shareholder distribution.[74] Courts consistently distinguish between loan repayments and distributions.

¶46     The District Court of the Virgin Islands, Division of Bankruptcy, addressed a scenario similar to the present matter in *In re Prosser*.[75] There, a transfer was inaccurately described in internal records but was nonetheless recorded in audited financial statements.[76] The court found that even though the transfer appeared in audited financial statements, the inaccurate description of the transfer constituted concealment.[77] This demonstrates that mischaracterization in financial records can satisfy the concealment badge even when the transfer is technically recorded. In *Knutsen-Rowell, Inc. v. Commissioner*, a tax court held that where purported loans were not evidenced by notes or writings, were unsecured, required no interest, had no repayment schedules, and the parties did not accurately track the loan amounts, the funds were actually considered distributions.[78]

¶47     Here, Kiwi's Profit and Loss Report creates an internal inconsistency that undermines the characterization of the transfer. Because a loan repayment and a shareholder distribution are distinct transactions with different legal consequences, documenting the transfer as a "shareholder distribution" in the main entry and "loan repayment" in the memo field creates ambiguity about the true nature of the transaction. While distributions do not require repayment and thereby reduce a company's assets without providing equivalent value, a loan repayment satisfies an antecedent debt and suggests a company previously received equivalent value.[79]

¶48     Kiwi's internal reporting discrepancy, combined with the fact that Holford has not presented evidence addressing when or under what circumstances he provided Kiwi with a loan constitute indicia of concealment weighing in favor of finding fraudulent intent under badge (b)(3).

### d.  Badge (b)(4): The Debtor was Sued or Threatened with Suit before the Transfer was Made.

¶49     Badge (b)(4) asks if "the debtor had been sued or threatened with suit" before the transfer was made. Here, the parties were in active litigation proceedings prior to the check's issue date in December 2014, and the parties received an arbitration decision prior to the check's deposit date in October 2015, satisfying badge (b)(4).

---

[74] Pls.' Suppl. Opp'n Ex. A-2 at 1-2.

[75] *In re Prosser*, 2009 WL 10705137, at *10 (Bkrtcy. D. Virgin Islands, 2009).

[76] *Id.* at 9-10.

[77] *Id.*

[78] *Knutsen-Rowell, Inc. v. C.I.R.*, T.C. Memo. 2011-65, 2011 WL 990160, at *13-14.

[79] *In re AppliedTheory Corp.*, 323 B.R. 838, 842 (Bankr. S.D.N.Y.).

Kiwi Construction, LLC v. Pono et al.                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 14 of 22

### e. Badge (b)(5): The Transfer Consisted of Substantially all of the Debtor's Assets.

¶50    Badge (b)(5) considers whether debtors transferred substantially all of their assets. As of October 1, 2015, Kiwi's account had a balance of $42,217.39.[80] After the check cleared on October 5, 2015, the account was left with $1,706.39.[81] Thereafter, the account had a negative balance beginning October 9, 2015.[82] Thus, badge (b)(5) is satisfied because Kiwi's bank records for its account ending in 1160 demonstrate the $40,000.00 transfer liquidated the remaining funds in the account.

### f. Badge (b)(6): The Debtor Absconded.

¶51    Neither Holford nor Kiwi absconded, failing to satisfy badge (b)(6).

### g. Badge (b)(7): The Debtor Removed or Concealed Assets.

¶52    Badge (b)(7), removal of assets, is satisfied by the transfer of $40,000.00.

### h. Badge (b)(8): the value of consideration received by the Debtor was reasonably equivalent to the asset transferred.

¶53    As discussed above, because the $40,000.00 transfer from Kiwi to Holford was a shareholder distribution rather than a loan repayment, Kiwi transferred an asset but received nothing in return. The absence of reasonably equivalent value for the transfer satisfies badge (b)(8).

### i. Badge (b)(9): the Debtor was insolvent or became insolvent shortly after the transfer was made.

¶54    For the reasons provided under analysis of badge (b)(5), badge (b)(9), considering Kiwi's insolvency, is also satisfied. Holford argues Kiwi was not insolvent because he expected Kiwi to be Big Bear's creditor when writing the check in 2014 and he had an assignment of Secunda's claims in 2015. This argument fails for several reasons. First, Holford's argument suggests he counted his pending arbitration claims against Big Bear as "assets" for purposes of calculating insolvency. While § 171's definition of a "claim"[83] encompasses disputed and unliquidated rights to payment, this differs from the statute's definition of an "asset," defined as "property of a debtor."[84] Thus, Kiwi's counterclaims against Big Bear did not amount to assets for which it could offset its potential liabilities.

---

[80] Def.'s Pet. Ex. A.
[81] *Id.*
[82] *Id.*
[83] 28 V.I.C. § 171(3).
[84] 28 V.I.C. § 171(2).

Kiwi Construction, LLC v. Pono et al.                                        2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 15 of 22

¶55     Further underscoring the impropriety of counting pending claims as "assets," in 2016 this Court previously held that "Kiwi Construction is not a valid assignee of Secunda and, therefore, Kiwi Construction lacks standing to bring a claim to recover damages he may be owed as third party beneficiary."[85]

¶56     Moreover, using the previously described method for calculating insolvency demonstrates that subtracting the $126,397.37 Judgment against Kiwi from either Kiwi's net income reported in its 2015[86] Profit and Loss Report or its 2015 Tax Return would still yield a negative balance for the company.[87] As such, Kiwi was insolvent before and immediately after the transfer was made. Because Kiwi's debts exceeded its assets at fair valuation, the $40,000.00 transfer satisfies badge (b)(9).

### j.  Badge (b)(10): the transfer occurred shortly before or after a substantial debt was incurred.

¶57     As noted in the Court's discussion of badge (b)(4), badge (b)(10) is also satisfied because the transfer occurred following the Arbitrator's decision in favor of Big Bear.

### k.  Badge (b)(11): the Debtor transferred essential assets to a lienor who transferred the assets to an insider of the debtor.

¶58     Badge (b)(11) is not satisfied for the reasons provided under analysis of previous transfers.

### l.  An Additional Finding of Fraud: the $40,000.00 check is out of sequence with others written in 2014.

¶59     The Court also finds the report of Forensic Accountant Catherine J. Connolly, to be informative.[88] On page nine of her report, Connolly notes that the check number for the $40,000.00 transfer, 1422, is out of sequence with other checks written at the end of 2014.[89] A review of the parties' filings demonstrates that checks issued in 2014 are numbered through the 1200s while checks with numbers from 1300 through 1400s appear in 2015. The Court finds these circumstances combined with the check being deposited in 2015 suggest that Holford either held on to the check until after the Arbitrator's decision, or the check's disbursement was initiated in 2015 and backdated to 2014. Both options are indicia of fraudulent intent.

---

[85] Order (October 30, 2016).

[86] See the Court's discussion below explaining that the check was deposited and likely issued in 2015, requiring the Court to consider the transfer in relation to Kiwi's financial position in 2015 rather than 2014.

[87] The Court notes that Kiwi's Schedule L, which would have provided information on the company's total assets in 2015, is left blank on Kiwi's 2015 Tax Return; Pls.' Suppl. Opp'n Ex. A-3 at 11; Ex. A-6 at 1.

[88] Report of Catherine J. Connolly (July 18, 2025).

[89] Id. at 4, 9-11; see also Def.'s Pet. Ex. A (indicating with an asterisk where there is a skip in check numbers).

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 16 of 22

2026 VI Super 16U

¶60    Consequently, the Court finds that Big Bear has sufficiently proven the existence of nine separate badges of fraud, namely factors (b)(1), (3), (4), (5), (7), (8), (9), and (10), including the timing surrounding the check's issue and deposit dates. Holford has not provided an adequate explanation for why Kiwi's account yielded a negative balance immediately following the transfer. He also has not explained why the $40,000.00 check was out of sequence with others written in 2014, nor why he waited nine months after the check was issued to deposit it. Accordingly, the Court concludes that these nine badges, in combination, establish the presumption that the $40,000.00 October 2015 transfer was fraudulent and that Holford and Kiwi failed to clearly rebut the inference.

## 2. Additional 2014 shareholder distributions.

¶61    The parties' arguments concerning the remainder of Kiwi's 2014 shareholder distributions are substantively identical to those previously advanced for the 2013 transfers. Kiwi's 2014 Profit and Loss Report[90] reflects that Holford received $62,726 in shareholder distributions for the year while Kiwi's tax forms reflect that Holford received $74,708.00.[91] Both figures include the $40,000.00 December 2014 check referenced above.

¶62    Having addressed Big Bear's initial claim regarding the $40,000.00 transfer, the following discussion addresses the balance of Kiwi's 2014 shareholder distributions. Subtracting Holford's previously addressed $40,000.00 shareholder distribution from the $74,708.00 reported on his tax forms demonstrates Holford received an additional $34,708.00 in shareholder distributions in 2014. The Court now turns to addressing Kiwi's remaining shareholder distributions under the badges of fraud analysis.

### a. Badges (b)(1), (4), (7), and (8) are satisfied.

¶63    Collectively, the shareholder distributions in 2014 satisfy badges (b)(1), (4), (7), (8), (9), and (10) as the transfers: (1) were to an insider, (4) were made after suit, (7) removed assets, and (8) were not made for reasonably equivalent value.

### b. Badge (b)(9) is satisfied.

¶64    Regarding badge (b)(9), Kiwi's 2014 Profit and Loss Report shows a net income of $68,545.12 before taxes.[92] Kiwi's 2014 Tax Return shows a net income of $74,708.00 before taxes.[93] On its Schedule L, Kiwi reported that its assets for 2014 totaled $183,103.00 and its liabilities for 2014 totaled $183,103.00[94] Thus, badge (b)(9), regarding insolvency, is satisfied

---

[90] Pls.' Suppl. Opp'n Ex. A-2 at 2.

[91] Pls.' Suppl. Opp'n Ex. A-5 at 4.

[92] Pls.' Suppl. Opp'n Ex. A-2 at 11.

[93] Pls.' Suppl. Opp'n Ex. A-5 at 5.

[94] Pls.' Suppl. Opp'n Ex. A-5 at 4.

Kiwi Construction, LLC v. Pono et al.                                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 17 of 22

because subtracting the $126,397.37 Judgment from either Kiwi's net income or assets demonstrates the company was insolvent when the transfers were made.

### c. Badge (b)(10) is satisfied.

¶65     Badge (b)(10) is satisfied as the remaining transfers occurring between the dates of January 13, 2014, and November 26, 2014, happened shortly after Kiwi's $126,397.37 debt arose by virtue of Big Bear's January 2013 Arbitration Demand.

### d. Badge (b)(2) is Not Satisfied.

¶66     Kiwi did not retain control over the transfers, failing to satisfy badge (b)(2).

### e. Badge (b)(3): the transfer was disclosed.

¶67     The transfer was described and disclosed by Kiwi's Profit and Loss Detail under badge (b)(3).

### f. Badges (b)(5), (6), and (11) are not satisfied.

¶68     The transfers did not consist of substantially all of Kiwi's assets, nor did Kiwi or Holford abscond, failing to satisfy badges (b)(5) and (b)(6), respectively. Badge (b)(11) is not satisfied as Kiwi did not transfer essential assets of the business to an insider lienor.

¶69     The Court finds six badges of fraud present as to the remainder of Kiwi's 2014 shareholder distributions, namely factors (b)(1), (4), (7), (8), (9), and (10). Holford does not address these transfers in his Opposition or Supplemental Opposition. Accordingly, the Court concludes that these six badges, in combination, establish that the transfers totaling $34,708.00 were fraudulent.

### C. Payments to Holford in 2015.

¶70     The parties' arguments concerning Kiwi's 2015 shareholder distributions are substantively identical to those previously advanced for the 2013 and 2014 transfers. Kiwi's 2015 Profit and Loss Report and its Tax Return reflect that Holford received approximately $27,929.00 in shareholder distributions for the tax year.[95] The company's Tax Return also reflect that it operated at a net loss for the year.[96] Kiwi's Schedule L, which would have provided information on the company's total assets in 2015, is left blank on Kiwi's 2015 Tax Return.

---

[95] Pls.' Suppl. Opp'n Ex. A-3 at 2; Pls.' Suppl. Opp'n Ex. A-6 at 1.
[96] Pls.' Suppl. Opp'n Ex. A-6 at 1.

Kiwi Construction, LLC v. Pono et al.                                    2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 18 of 22

### a. Badges (b)(1), (4), (7), (8), (9), and (10) are satisfied.

¶71    For the reasons articulated in the analysis of Kiwi's 2014 shareholder distributions, the Court finds seven badges of fraud present as to Kiwi's 2015 shareholder distributions, namely factors (b)(1), (4), (7), (8), (9), and (10).

### b. An Additional Finding of Fraud: the transfers are unrelated to legitimate business expenses.

¶72    Evidence that the transactions appear primarily devoted to Holford's personal expenses, or use unrelated to legitimate business purposes, strongly supports an additional finding of fraudulent intent to drain the company's assets.[97]

### c. Badge (b)(2) is not satisfied.

¶73    Kiwi did not retain control over the transfers, failing to satisfy badge (b)(2).

### d. Badge (b)(3): the transfer was disclosed.

¶74    The transfers were described and disclosed by Kiwi's Profit and Loss Detail under badge (b)(3).

### e. Badges (b)(5), (6), and (11) are not satisfied.

¶75    The transfers did not consist of substantially all of Kiwi's assets, nor did Kiwi or Holford abscond, failing to satisfy badges (b)(5) and (b)(6). Badge (b)(11) is not satisfied as Kiwi did not transfer essential assets of the business to an insider lienor.

¶76    Holford does not address these transfers in his Opposition or Supplemental Opposition. Accordingly, the Court concludes that these seven badges, in combination, establish that the transfers were fraudulent which Kiwi and Holford failed to clearly rebut.

### D. Additional expenses from 2013-2015 personally attributed to Holford.

#### 1. Boating, Fuel, Meals, and Entertainment Costs.

¶77    The Court declines to conduct an exhaustive, granular inquiry into every additional transaction of Kiwi's between 2013 and 2015 that Big Bear asserts are fraudulent transfers. Big Bear argues generally that lack of receipts or supporting documentation for these transactions suggests they were for the benefit of Holford rather than Kiwi. These general assertions fail to meet the burden of proof required to establish fraudulent intent under the badges of fraud

---

[97] See Pls.' Suppl. Opp'n Ex. A-3 at 1.

Kiwi Construction, LLC v. Pono et al.                                              2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 19 of 22

enumerated in 28 V.I.C. § 174. For most of the transactions, a lack of documentation constitutes, at best, inefficient record-keeping rather than intentional fraud. Instead, the Court will scrutinize the specific transactions and few instances that demonstrate the classic "badges" and hallmarks of suspicious activity.

¶78    Accordingly, the Court finds that Big Bear's claims in Sections E(1) and E(2) of its Supplemental Response, concerning boating, fuel, meal, and entertainment costs do not adequately demonstrate indicia of fraud. For example, in section (E)(1) of its Supplemental Response, Big Bear states "Since Mr. Holford has already testified that he has a boat and a boat trailer, marina fuel and expenses would be for Mr. Holford's boat, and not expense for Kiwi Construction."[98] Regarding Kiwi's meal and entertainment costs, "Big Bear asserts they are simply Mr. Holford feeding or drinking for himself" because "there are no receipts or records indicating any corporate entertainment of clients or business meetings which would constitute an actual business expense."[99] Stated plainly, the record is devoid of evidence to conclusively distinguish these transactions from legitimate business expenditures and it remains plausible that they are costs attributable to Kiwi.

## 2. Travel expenses.

¶79    Kiwi's 2014 Profit and Loss Report reflects that on October 24, 2014, Kiwi issued a $8,913.50 check for what the memo reads as "NZ tickets."[100] Big Bear alleges that this travel expense was a personal expense for Holford incorrectly categorized as a business expense on his internal report. As evidence, Big Bear cites to answers given by Holford at his November 10, 2016, deposition.[101] There, Holford states that he vacationed in New Zealand at the end of 2014.[102]

### a. Badges (b)(1), (3), (4), (7), (8), (9), and (10) are satisfied.

¶80    Any inference that Holford's trip to New Zealand could have had a legitimate business purpose is rebutted by Holford's own admission at his deposition. Rather than a business "travel expense," the transfer is tantamount to another shareholder distribution for the year. Thus, the $8,913.50 October 2014 check satisfies badges (b)(1), (3), (4), (7), (8), (9), and (10) as the transfer: (1) was to an insider, (3) was concealed by its inaccurate description, (4) was made after suit, (7) removed assets, (8) was not made for reasonably equivalent value, and (9) was made at a time when Kiwi was balance sheet insolvent, per the Court's earlier discussion of the company's financial position in 2014. Badge (b)(10) is satisfied as the transfer occurred after Kiwi's $126,397.37 "debt" was incurred from Big Bear's January 2013 Arbitration Demand.

---

[98] Def.'s. Resp. to Suppl. Opp'n at 7.
[99] Def.'s. Resp. to Suppl. Opp'n at 8.
[100] Pls.' Suppl. Opp'n Ex. A-2 at 2.
[101] Def.'s. Resp. to Suppl. Opp'n at 9.
[102] Pls.' Suppl. Opp'n Ex. B at 11-12.

**Kiwi Construction, LLC v. Pono et al.**
Case No. ST-2013-CV-00011
**Big Bear Construction, Inc. et al. v. Holford**
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 20 of 22

2026 VI Super 16U

### b. Badges (b)(2), (5), (6), and (11) are not satisfied.

¶81    Kiwi did not retain control over the transfers, failing to satisfy badge (b)(2). The transfers did not consist of substantially all of Kiwi's assets, nor did Kiwi or Holford abscond, failing to satisfy badges (b)(5) and (b)(6), respectively. Badge (b)(11) is not satisfied as Kiwi did not transfer essential assets of the business to an insider lienor.

¶82    The Court finds seven badges of fraud present as to the $8,913.50 October 2014 transfer, namely factors (b)(1), (3), (4), (7), (8), (9), and (10). Holford does not address these transfers in his Opposition or Supplemental Opposition. Accordingly, the Court concludes that these seven badges, in combination, show that the transfer was fraudulent.

### 3.    Expenses for Holford's home totaling $25,804.27.

¶83    Kiwi's 2015 Profit and Loss Report reflects that on multiple dates throughout 2015, Kiwi issued varying amounts of funds to merchants, business entities, and repair shops for work seemingly done on his personal residence. As evidence, Big Bear cites to the descriptions of the transferred funds in Kiwi's Profit and Loss Report, including expenses unusual for the company such as "security," at 1C Fish Bay, Holford's personal residence.[103] Big Bear also points to answers given by Holford at his November 10, 2016, deposition where Holford states he did not pay Kiwi laborers doing work on his home through his personal account.[104]

¶84    The Court finds the transfers listed under the categories of security, building supplies, casual labor, and contract labor and directed to Holford's personal address at 1C Fish Bay are tantamount to shareholder distributions for the year. The expenses in these categories total $25,804.27. Any inference to the contrary that Holford paid for the personal improvements at his home through his own accounts and not Kiwi's is rebutted by Holford's own admissions in his deposition. Holford offers no explanation in his Opposition or Supplemental Opposition for why Kiwi incurred expenses for 1C Fish Bay, or how work at the property could relate to a legitimate business purpose for Kiwi. Further, there is no evidence that Holford made any effort to reimburse Kiwi or have appropriate charges made to his personal account.

### a.    Badges (b)(1), (3), (4), (7), (8), (9), and (10) are satisfied.

¶85    Accordingly, the transfers totaling $25,804.27 satisfy badges (b)(1), (3), (4), (7), (8), (9), and (10) because they: (1) were to an insider, (3) were concealed by their inaccurate description on Kiwi's Profit and Loss Report, (4) were made after suit, (7) removed assets, (8) were not made for reasonably equivalent value, and (9) were made at a time when Kiwi was balance sheet

---

[103] Def.'s. Resp. to Suppl. Opp'n at 9-11.
[104] Def.'s. Resp. to Suppl. Opp'n at 10; Pls.' Suppl. Opp'n Ex. B at 5-8.

Kiwi Construction, LLC v. Pono et al.
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 21 of 22

2026 VI Super 16U

insolvent. Badge (b)(10) is satisfied as the transfer occurred after Kiwi's $126,397.37 "debt" was incurred by virtue of Big Bear's January 2013 Arbitration Demand.

### b. Badges (b)(2), (5), (6), and (11) are not satisfied.

¶86    Kiwi did not retain control over the transfers, failing to satisfy badge (b)(2). The transfers did not consist of substantially all of Kiwi's assets, nor did Kiwi or Holford abscond, failing to satisfy badges (b)(5) and (b)(6). Badge (b)(11) is not satisfied as Kiwi did not transfer essential assets of the business to an insider lienor.

¶87    The Court finds seven badges of fraud present as to the 2015 transfers totaling $25,804.27, namely factors (b)(1), (3), (4), (7), (8), (9), and (10). Holford does not address these transfers in his Opposition or Supplemental Opposition. Accordingly, the Court concludes that these seven badges, in combination, establish that the transfer was fraudulent.

## V.    CONCLUSION.

¶88    The Court finds Big Bear provided evidence that Kiwi made numerous fraudulent transfers before and after the arbitration proceedings began. The burden then shifted to Kiwi to provide evidence upholding the legitimacy of the transfers, which it failed to do. The Court thus finds that Kiwi and Holford made the transfers with actual intent to hinder, delay, or defraud Big Bear.

¶89    The VIUFTA provides that a creditor may obtain as a relief for a fraudulent transfer by avoidance of that transfer to the extent necessary to satisfy the creditor's claim.[105] When a creditor seeks avoidance under this subsection the creditor may recover a judgment from the transferee for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less.[106]

| Transfer | Date | Amount |
|---|---|---|
| Wire transfer from Kiwi to Steen Enterprises. | 6/8/2013 | $ 45,000.00 |
| Check number 1102 paid to Holford. | 12/13/2013 | $ 60,000.00 |
| Check written in 2015 and backdated to 2014. | 10/5/2015 | $ 40,000.00 |
| Additional 2014 shareholder distributions. | Various dates throughout 2014. | $ 34,708.00 |
| Shareholder distributions for 2015. | Various dates throughout 2015. | $ 27,929.00 |
| Expenses for Holford's home. | Various dates throughout 2015. | $ 25,804.27 |
| Holford's ticket expense for a personal vacation in New Zealand. | 10/24/2014 | $  8,913.00 |
| Total | | $242,354.77 |

---

[105] 28 V.I.C. § 177(a)(1).
[106] 28 V.I.C. § 178(b)(1).

Kiwi Construction, LLC v. Pono et al.                                                     2026 VI Super 16U
Case No. ST-2013-CV-00011
Big Bear Construction, Inc. et al. v. Holford
Case No. ST-2013-CV-00670
Memorandum Opinion
Page 22 of 22

¶90     Here, it is evident that the remainder of the Judgment to be satisfied, $98,388.80, is less than the value of the various fraudulent transfers. Therefore, pursuant to § 178(b)(1), the Court will enter judgment against Philip Holford and in favor of Big Bear Construction, Inc. in the amount of $98,388.80.

¶91     Judgment consistent with this Memorandum Opinion follows.

DATED: April   27  , 2026

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor  5 / 7 / 2026